THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ARSENIO DÍAZ MARTÍNEZ, Defendant and Appellant.

No. Cr–62–124.   Decided March 11, 1963.

*José Rafael Gelpí* and *Manuel A. Barreto Barrios* for appellant.
*J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was found guilty by a court without a jury of an offense of statutory rape and sentenced to serve from 10 to 20 years' imprisonment in the penitentiary. He appealed and assigns the commission of eight errors.

For the result which we shall reach, it will be sufficient to consider only the errors pointed out under Nos. 6 and 7. We shall discuss them in inverted order.

Error No. 7 consists in that defendant was convicted without there being corroborative evidence.

■ It is known that in a trial for rape defendant can not be convicted upon the testimony of the woman upon or with whom the offense was committed, unless her testimony is corroborated by other evidence. Section 250 of the Code of Criminal Procedure (34 L.P.R.A. § 729) ; *People* v. *Márquez,* 64 P.R.R. 354.

■ The aggrieved minor in this case testified on the acts performed upon her by defendant. The facts related by her establish all the elements constituting the offense of rape. Regarding her defloration, the same was corroborated by the physician who examined her. However, this evidence of corroboration does not connect defendant with the commission of the offense, nor would it be sufficient to comply with § 250 *supra* of the Code of Criminal Procedure. *People* v. *Lugo,* 70 P.R.R. 134; *People* v. *De Jesús,* 30 P.R.R. 219. However, the prosecutrix also testified:

> "A. She came later and since I was working in the house of Antonio Ostolaza, I went to his house to look after the children, and Celestina Montañez asked me what was wrong and I told her. She saw me crying and asked me, and I told her that my stepfather had wronged me."

Witness Celestina Montañez testified the following:

"Q. Did you talk with her that day?

A. Yes, sir.

Q. What did you talk about?

A. She arrived that day, in the month of September; she was sad and shaking, suffering. I noticed it and asked her what was wrong. She said, if you knew, something terrible with my father happened to me. I asked her and she said, when my mother sent me to New York I was in my aunt's house. My aunt sent for me and a man tried to wrong me. I then went to the house of another woman. The woman called the police and they didn't do much to him. That then she came to Puerto Rico and Arsenio Díaz, the stepfather, had wronged her three times; that's what she told me. I said to her, why don't you tell that to your mother? No, because that man threatens to kill me; he is dangerous. I did not dare either tell anyone for fear he would beat me; I am afraid of him.

Q. Why?

A. Because he is a very strong man.

Q. Do you know him?

A. Yes, sir, we are neighbors.

Hon. Judge:
    What do you mean by saying that the girl had been wronged three times?

A. I asked her what she meant by having been wronged. I asked her, did he intend to use you as his wife? And she said, yes, ma'am. She was very shaky and crying. I asked her what she meant by that, that he had intercourse with you as wife and husband, and she said yes. I was afraid also because he is a dangerous man.

Q. Why do you say he is dangerous?

A. The girl told me that, that he was dangerous and that he would kill her if she said anything to her mother or to someone else." (Brief of Solicitor General, pp. 9 and 10.)

■ Such evidence, if believed, would be sufficient to establish the corroboration required by law. *People* v. *Lugo*,

*supra; People* v. *Muñoz,* 68 P.R.R. 159; *People* v. *Fuentes,* 63 P.R.R. 42; *People* v. *Párquez,* 34 P.R.R. 538; *People* v. *Montero,* 34 P.R.R. 275.

However, we agree with appellant that error No. 6 was committed. It is not difficult to conclude, after a careful examination of the record, that appellant did not have due assistance of counsel. Let us see everything that happened in this prosecution since its inception.

At the arraignment the court appointed an attorney for defendant who was insolvent. The attorney pleaded not guilty and moved for a trial by jury. Thereupon the hearing was set for February 19, 1962. The court, presided that day by Judge Villares Rodríguez, was called to order. The case was called and thereupon the judge informed that defendant's attorney appointed by the court had asked permission to come late, and that in order to take a deposition of Dr. Gerónimo Delgado (prosecution witness) he was going to appoint Mr. Peña Clos to represent defendant, since the attorney appointed by the court had stated that he was agreeable that the deposition be taken so that the physician could be excused.[1] The physician was sworn in and he was examined by the district attorney and then cross-examined by Mr. Peña Clos. The physician testified on the examination of the prosecutrix' genital parts and on the findings thereof. His testimony, in connecting defendant with the commission of the offense, was adverse and prejudicial to the latter. Defendant asserted before us that he was not present when the physician's deposition was taken. The Solicitor General does not allege otherwise, confining himself to maintaining that defendant's right to be present during the trial in a felony prosecution does not extend to the taking of a deposi-

---

[1] We assume that the attorney designated by the court got in touch in some way with Judge Villares to ask permission to come late to court. We do not know whether that attorney was the one who suggested that deposition be taken to the physician, or whether that was a condition imposed to him in order to grant the permission requested.

tion. The record is silent as to whether or not Mr. Peña Clos conferred with defendant before intervening as his attorney in the taking of the deposition. The impression gathered from the record is that since the court was called to order and until the end of the deposition defendant did not interview or confer with Mr. Peña Clos.[2]

The deposition having been taken, the court adjourned and it was again called to order, this time presiding Judge Ydrach, and defendant represented by the attorney originally appointed by the court. The case was called again and the following then took place:

> "Hon. Judge Ydrach:
>     Ready?
> District Attorney:
>     Ready.
> Hon. Judge:
>     By the court without a jury?
> Attorney appointed by the Court:
>     Yes, sir.
> Q. Do you waive the jury?
> A. Yes, sir.
> Q. The waiver by defendant is accepted."

■■ Apparently there was a waiver of trial by jury insinuated by the magistrate who presided the court on this occasion. Where a defendant requests to be tried by a jury, based on his constitutional right to do so, the waiver of such right should be made by defendant spontaneously or voluntarily. Where the question of waiver arises from a suggestion made by the presiding judge, it is likely that the defense attorney is placed in the difficult dilemma of voicing his preference of the jury over the judge to pass on the facts. However, it is the attorney's duty to safeguard defendant's **rights** without taking into account other considerations which are not the best defense of his client's interests.

---

[2] Mr. Peña Clos confined himself to carry out the mission entrusted to him by the court and he cross-examined the physician in the manner which in his opinion would better safeguard defendant's interests.

Defendant was then arraigned and he pleaded not guilty. The following then took place:

"Hon. Judge:
  This sworn statement of Dr. Gerónimo Corrada which is filed on record was presented when?
District Attorney:
  Today.
Q. Colleague.. was present (name of attorney appointed by the court).
A. Mr. Peña.
Q. Do you admit that this sworn statement was given by the physician?
A. Yes.
Q. Do you admit that it forms part of the case?
A. Yes, sir.
Q. Is there any question you wish to raise?
A. No.
Q. Is it considered waived, if any?
A. Yes.
Q. Mark the same Exhibit 1 of the People.  Proceed."

As a result of such admission and absolute waiver of any issue by defendant, the deposition given by the physician, witness for the prosecution, was incorporated in the case as competent evidence for the sole reason that it was necessary to excuse the physician early.

The presumptive prosecutrix testified after this incident. She testified at length on the facts which unquestionably incriminated defendant seriously.

The defense attorney put two questions to this witness. The first was whether defendant was her mother's husband and the second if she had bled.

The next witness testified that she saw the prosecutrix washing dishes the day of the occurrence, that when she saw she was crying she asked her if the tooth which she had had extracted was aching, to which she answered that it was not and made a gesticulation; that at that same hour she saw defendant around there.

The cross-examination of this witness was confined to one question, to wit: whether the gesticulation made by the prosecutrix "was here, on the breast," to which the witness answered in the affirmative.

As to witness Celestina Montañez who testified on the prosecutrix' complaint, the defense attorney cross-examined her at length and moved unsuccessfully for the elimination of her testimony as not being part of the *res gestae*. He also raised the question, of course without any merit, that from Dr. Corrada's deposition it did not appear that the girl had been deflowered. The district attorney waived two witnesses as being cumulative evidence and placed them at the disposal of the defense. It appears from the record that the defense attorney made no attempt to determine the possibility of using those witnesses as defense evidence.

The defense attorney called defendant to the witness stand. He denied having had sexual intercourse with the prosecutrix, although he admitted that he "fondled" and "pawed" her.

At the close of his testimony the following took place:

"Hon. Judge:
    You may withdraw
    To the lady: Look, lady, this man who is your husband is accused of raping your daughter. The district attorney has evidence to prove it; he says that he did not do it. He has said here that he fondled your daughter, that he pawed her.
Defense:
    Let us ask her about the letter.
Hon. Judge:
    Oath (she is sworn in)."

Thereupon the defense attorney started to examine the witness, defendant's wife. Her testimony was highly prejudicial to the latter.[3] The witness showed great hostility

---

[3] That witness testified:
"Defense:
    Your name?

against her husband, the defendant. She said, among other things that defendant had threatened her if she did not testify in his defense, that he was no saint, and that she wanted to divorce him.

The defense attorney could have protected the accused by objecting to the examination of his wife by the judge *motu proprio*, without being called as a witness by either party. Nor should he have asked her to take the witness stand if he did not know the contents of her testimony. She was a witness who was precluded from testifying against her husband, unless the latter gave his consent. Section 402 of the Law of Evidence (32 L.P.R.A. § 1734). There is no question that this witness' testimony contributed to buttress the State's case.

■ We ratify what we said in *People* v. *Torres*, 81 P.R.R. 659, to the effect that the mistakes or errors of defendant's counsel (whether the latter be a public defender, an attorney

---

A. Rosa Julia Rosa.
Q. Where do you live?
A. In San Lorenzo, in the ward of Santa Clara.
Q. Do you know the defendant?
A. Yes.
Q. What is his name?
A. Arsenio Díaz.
Q. Are you married?
A. Yes.
Q. Did he write you any letter from the district jail of Humacao?
A. Yes.
Q. What did the letter say?
A. He said that later it would be worse. You see him there looking like a saint.
Q. Are these the letters?
A. There they are.
Q. What about the others?
A. At home.
Q. The only one you wanted was this?
A. That one only? No. I want to tell you also that I want to get a divorce.
Q. Nowhere in this letter does he say anything about it; he does not speak about threats in any of them.
Hon. Judge:
   It does.

designated by the court or an attorney who has been chosen and paid by defendant himself) can not be invoked on appeal as a ground for obtaining a reversal of the decision or judgment. However, the exceptional circumstances surrounding this case convince us that defendant did not have due assistance of counsel. This calls for reversal of the judgment and the ordering of a new trial.

Defense:
That later it will be worse, is that a threat? That's all, Your Honor.
District Attorney:
You say that this man has threatened you?
A. Yes.
Q. What does he say to you?
A. He does like this with his hand. In the very jail he said to me, 'you bitch, if you don't testify on my behalf.'
Q. He said that to you in jail?
A. Yes, sir." (Tr. Ev. 30-32.)